GRIFFITH & THORNBURGH, LLP
ATTORNEYS AND COUNSELORS

8 EAST FIGUEROA STREET, SUITE 300
SANTA BARBARA, CA 93101
TELEPHONE: 805-965-5131
TELECOPIER: 805-965-6751

(SPACE BELOW FOR FILING STAMP ONLY)

Joseph M. Sholder, Bar No. 126347
Felicita A. Torres, Bar No. 298630

Attorneys for Trustee, Sandra K. McBeth

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re | BK No. 9:16-bk-10191-PC |
| Adam Daniel Taylor, | Chapter 7 |
| Debtor. | MOTION FOR ORDER AUTHORIZING TRUSTEE TO COMPROMISE CONTROVERSY WITH ADAM TAYLOR, INDIVIDUALLY AND IN HIS CAPACITY AS A DEBTOR IN THIS BANKRUPTCY CASE; THE GGC TRUST FOR ADAM TAYLOR U/A/D 12/1/08; THE TAYLOR ANNUAL GIFT TRUST FOR ADAM TAYLOR U/A/D 12/14; THE TAYLOR 1992 ANNUAL GIFT TRUST FOR ADAM TAYLOR U/A/D 12/17/92; JEFF TAYLOR, AS TRUSTEE FOR THE GGC TRUST, THE 1982 GIFT TRUST AND THE 1992 GIFT TRUST; AND CARA TAYLOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SANDRA K. MCBETH IN SUPPORT THEREOF

[No Hearing Required LBR 9013-1(o)] NO HEARING REQUIRED |

- 1 -

1  TO THE HONORABLE PETER CARROLL, UNITED STATES

2  BANKRUPTCY JUDGE:

3  Sandra K. McBeth, the duly appointed Chapter 7 Trustee (the "Trustee")

4  for the bankruptcy estate of Adam Taylor, respectfully moves this Court for an

5  order pursuant to Federal Rule of Bankruptcy Procedure 9019 and Local

6  Bankruptcy Rule 9013-1(o)(1) authorizing the compromise of controversy with

7  Adam Taylor, individually and in his capacity as a debtor in the bankruptcy case

8  defined below; the GGC Trust for Adam Taylor U/A/D 12/1/08 (the "GGC

9  Trust"); the Taylor Annual Gift Trust for Adam Taylor U/A/D 12/14/82 (the

10  "1982 Gift Trust"); the Taylor 1992 Annual Gift Trust for Adam Taylor U/A/D

11  12/17/92 (the "1992 Gift Trust"); Jeff Taylor, as trustee for the GGC Trust, the

12  1982 Gift Trust and the 1992 Gift Trust; and Cara Taylor (collectively, the

13  "Taylor Parties") on the terms set forth in the Settlement and Release Agreement

14  (the "Agreement") attached to this Motion as Exhibit A and as more fully

15  described herein.

16  In support of this Motion, the Trustee will rely on the attached

17  Memorandum of Points and Authorities, the Declaration of Sandra K. McBeth;

18  the Notice of the Motion which is served upon all interested parties pursuant to

19  Rule 2002(a) of the Federal Rules of Bankruptcy Procedure; all pleadings and

20  records on file herein; all matters which are subject to judicial notice; and all

21  other evidence which may be introduced at or prior to any hearing on this Motion.

22  Accordingly, the Trustee respectfully requests that this Court enter an

23  order:

24  1. Granting the Motion;

25  2. Approving the Agreement in the form as set forth in Exhibit A in an

26  order substantially in the form and substance to the order attached hereto as

27  Exhibit B;

28

3. Authorizing and directing the Trustee and the Taylor Parties to take any and all steps necessary to effectuate the Agreement;

4. Enjoining creditors and other parties in interest from pursuing any of the Estate Released Claims as defined in the Agreement; and

5. Providing such other and further relief as is just and proper.

DATED:  November ___, 2016

GRIFFITH & THORNBURGH, LLP

_____

JOSEPH M. SHOLDER,
FELICITA A. TORRES, Attorneys
for Sandra K. McBeth, Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    STATEMENT OF FACTS AND TERMS OF THE COMPROMISE

A.    **The Taylor Parties**

Adam Taylor is the debtor in this case. He filed a voluntary petition under chapter 7 on February 2, 2016.

Jeff Taylor is Adam's father. Jeff is also the trustee of the GGC Trust, the 1982 Gift Trust, and the 1992 Gift Trust.

The GGC Trust, 1982 Gift Trust, and the 1992 Gift Trust are trusts established years ago by Adam's grandparents. Adam is a beneficiary of these trusts.

Cara Taylor is Adam's soon-to-be former spouse. Adam and Cara are parties to a dissolution of marriage proceeding in the Lake County, Illinois Circuit Court. That action was filed on April 10, 2014. The state court has not divided the marital property, due, in part, to the filing of this bankruptcy case.

B.    **The Trustee's Administration of this Case.**

The Trustee conducted four meetings of creditors pursuant to 11 U.S.C. § 341(a) and reviewed hundreds of documents produced by Adam. Those documents included the trust documents for the GGC Trust, the 1982 Gift Trust, and the 1992 Gift Trust, a schedule of loans made by the GGC Trust to Adam for use in Adam's real estate business entities and Adam's repayments of those loans, a schedule of Adam's expenditure of his personal funds prior to the petition date, and emails relating to Adam's pre-bankruptcy activities. In addition to reviewing the trust documents for the GGC Trust, 1982 Gift Trust, and the 1992 Gift Trust, the Trustee's counsel also obtained an analysis from professionals for the trustee of these trusts, which discussed the history of these trusts, their assets, and Adam's rights to distributions from them.

Other than two fraudulent conveyance actions and a potential objection to discharge, the Trustee determined that it was unlikely that the estate had any

realistic claims to the assets of the trusts.  The GGC Trust expressly includes a spendthrift provision.  The documents received and reviewed by the Trustee show that the trustee for the GGC Trust exercised significant control over the trust funds so it seems unlikely that the estate could successfully argue that trust was not a valid spendthrift trust.  The analysis the Trustee obtained from the lawyer for the 1982 Gift Trust, and the 1992 Gift Trust showed that these trusts either had minimal assets or that Adam had no right to those assets.  As part of the settlement agreement, the Trustee and the estate are releasing any and all claims against the Taylor Parties, including any claim that the corpuses of the trusts are property of the estate under section 541 of the Bankruptcy Code.

The claims that the Trustee determined she could pursue for the benefit of this estate are the following:

**1.      Fraudulent Conveyance Claim Against the GGC Trust.**

The estate believes it has a $235,000 claim against the GGC Trust.  That claim arises from the following contentions.

Pre-petition, Adam operated a real estate business through various entities. This business consisted primarily of buying and selling residential real property. The GGC Trust extended a $1.5 million line of credit to Adam to finance his real estate business.  Adam would take the loan proceeds and re-loan them to one of his entities.  When an entity sold a property, it repaid Adam from the loan proceeds and Adam then repaid the GGC Trust.

According to the schedule of the GGC loans and repayments produced by Adam, the GGC Trust advanced $250,000 to Adam in February or March 2014. Adam loaned that advance to one of his entities, MT Homes, which then used those funds to settle a claim with MT Home's lender.  Adam subsequently repaid $200,493 of this advance to the GGC Trust.  Although the schedule of the GGC loans and repayments listed the $250,000 as a loan, Adam's amended statement of financial affairs told a different story.  That statement characterized  the

$250,000 advance as distribution — income— and not a loan. Assuming that Adam's statement of financial affairs is correct, Adam received $250,000 of income from the GGC Trust and then gave back $200,493. Since the $250,000 was income and not an antecedent debt, the Trustee contends that Adam received no reasonably equivalent value for the $200,493 when he transferred it to the GGC Trust. As such, the Trustee believes that the $200,493 transfer is a fraudulent conveyance.

A similar transfer occurred regarding the purchase of a property by Gliese Development, another of Adam's entities, of a property located at 1700 Herman. The schedule of the GGC loans and repayments shows that on March 20, 2014, the GGC Trust advanced Adam $57,000 so Gliese could buy the Herman property. The schedule also shows that this entire loan was repaid. (It actually shows a repayment of $58,905). But the amended statement of financial affairs lists $35,000 of this advance as a distribution to Adam. The fraudulent conveyance analysis is the same: Adam gave back the $35,000 distribution to the GGC Trust but received no reasonably equivalent value for doing so since he was under no obligation to repay income he received from the GGC Trust.

The GGC Trust disputes that the estate has any valid claims against it and asserts the evidence would demonstrate that the GGC Trust did not receive any avoidable transfers from Adam.

## 2. Fraudulent Conveyance Claim Against Cara Taylor

Adam's statement of financial affairs shows that he transferred $150,000 to Cara on September 4, 2014. An email the Trustee reviewed from Adam's counsel to Adam opines that this transfer to Cara was a fraudulent transfer. At his creditor's meeting, Adam could not identify any value he received in exchange for that transfer.

### 3.   Objection to Discharge

The Trustee contends that she has obtained evidence indicating that Adam may have acted to hinder, defraud, or delay his creditors in at least three ways. First, Adam filed this case in part because the American Enterprise Bank and First Midwest Bank obtained judgments against him.  Before the judgments  were entered, the Trustee contends that Adam received distributions from the GGC Trust directly into his bank account and then paid his expenses and creditors from his bank account.  After the banks got the judgments and commenced post-judgment proceedings, when Adam needed money, the GGC Trust paid his creditors directly so that the funds would not be deposited into Adam's account and subject any levies.  The Trustee contends that emails the Trustee reviewed show that this change was done on the advice of counsel, apparently to hinder the banks' collection efforts.

Adam assets that these disbursements were made directly by the GGC Trust to his creditors because the trustee of the GGC Trust intended to use the trust funds for the purposes set forth in the GGC Trust consistent with the trustee's fiduciary duty to the GCC Trust beneficiaries.  Adam contends that he does not control the disbursement of funds from the GGC Trust. Adam also contends that he would have been violating Illinois citation law had, after he was served with a citation, he spent any funds deposited into a bank account which he controlled.  Adam contends that the trustee of the GGC Trust determined he would not make any disbursements to Adam directly once post-judgment proceedings had been commenced against Adam. Adam contends any actions taken by the trustee of the GGC Trust cannot serve as a basis to deny Adam a discharge and the Trustee would be unsuccessful in challenging his discharge on that basis.

Second, after the bank got its judgment, $75,000 was deposited in Adam's personal account.  Adam sent an email to his financial advisor saying that he

couldn't have any money in his personal name and insisted that the $75,000 be removed from that account.  The Trustee contends this indicates that Adam was trying to hinder the bank's collection efforts.  Adam disputes that he acted with a prohibited intent in seeking a transfer of the $75,000 into a different account. Adam further asserts that this transfer took place prior to one year before the filing of this bankruptcy case thereby placing it outside the one-year lookback period under section 727(a)(2) of the Bankruptcy Code.

Third, an email the Trustee has reviewed indicate that Adam may have transferred the $150,000 to Cara with the intent to hinder, defraud or delay the bank's collection efforts.  Adam denies that he acted with a prohibited intent. Adam further asserts that this transfer took place prior to one year before the filing of this bankruptcy case thereby placing it outside the one-year lookback period under section 727(a)(2) of the Bankruptcy Code.

The Trustee asserts there are other possible grounds to object to Adam's discharge.  The Trustee contends that Adam was incapable of explaining his financial affairs during his four, hours-long creditors examinations.  The Trustee believes Adam's tactic was to present the Trustee with documents purporting to explain his assets and liabilities, but when the Trustee asked questions about the information contained in those documents, Adam testified that he relied upon his advisors to prepare the documents and couldn't answer the Trustee's questions. The Trustee asserts Adam did so even when examined about portions of his bankruptcy schedules and statement of financial affairs that he had signed under penalty of perjury.  The Trustee contends that Adam's testimony was contradictory and untruthful on a number of material issues.

Adam disputes the Trustee's contentions and asserts that his conduct and actions do not give rise to a meritorious objection to his discharge.

## C. Proposed Settlement Between the Trustee and the Taylor Parties.

Pursuant to the Agreement, the Taylor Parties shall pay the Trustee $215,000 within three business days of the later to occur of (i) the entry of a final non-appealable order approving the Agreement; and (ii) the deadline for the United States Trustee to object to the Debtor receiving a discharge under 11 U.S.C. § 727 having expired without an objection to the Debtor receiving a discharge having been filed.  In exchange, the Trustee and the estate will release the Taylor Parties from all claims the estate might have against them, including the fraudulent conveyance and objection to discharge claims described above as well as any and all claims for the avoidance of preferential transfers under 11 U.S.C. § 547(b), the avoidance of fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and (B) and 544(b) and the California Uniform Fraudulent Transfer Act, turnover and accounting under 11 U.S.C. § 542, breach of fiduciary duties, denying the Debtor a discharge under 11 U.S.C. § 727, and seeking a determination that under 11 U.S.C. § 541 that the Beneficial Interests and/or the corpus of the Spendthrift Trusts constitute property of the estate or that the estate has any interest therein.  Paragraph 8(a) of the Agreement refers to all these claims as the "Estate Released Claims."  Per paragraph 5, the parties' obligations under the Agreement are contingent upon the entry of an order finding that the Estate Released Claims "constitute the exclusive property of the Estate and the Trustee holds the sole and exclusive standing to seek recovery on account of the Estate Released Claims."  They are also contingent upon this court enjoining creditors from pursuing the Estate Released Claims and including in the court's order approving the Agreement the following language: "ALL PERSONS (AS DEFINED IN SECTION 101(41) OF THE CODE) INCLUDING THE TRUSTEE AND ALL CREDITORS OF THE DEBTOR ARE HEREBY PERMANENTLY BARRED, ENJOINED, AND  RESTRAINED FROM COMMENCING, PROSECUTING, OR ASSERTING ANY ACTION OR

1  PROCEEDING AGAINST THE TAYLOR PARTIES ON ACCOUNT OF, OR

2  WITH RESPECT TO, ANY OF THE ESTATE RELEASED CLAIMS."

3  **II.    ARGUMENT**

4  **A. The Court Should Approve the Agreement as a Compromise or**

5  **Settlement Pursuant to Bankruptcy Rule 9019.**

6  Bankruptcy Rule 9019(a) provides that: "On motion by the trustee and

7  after a hearing on notice to creditors, the United States trustee, the debtor and

8  indenture trustees as provided in Rule 2002 and to such other entities as the court

9  may designate, the court may approve a compromise or settlement."

10  The Court of Appeals for the Ninth Circuit has long recognized that "[t]he

11  bankruptcy court has great latitude in approving compromise agreements."

12  *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th

13  Cir. 1988). "The purpose of a compromise agreement is to allow the trustee  and

14  the creditors to avoid the expenses and burdens associated with litigating sharply

15  contested  and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784

16  F.2d 1377, 1380–81 (9th Cir. 1986). Accordingly, in approving a settlement

17  agreement, the Court need not conduct an exhaustive investigation of the claims

18  sought to be compromised. See *United States v. Alaska National Bank (In re*

19  *Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir.  1982).  Rather, it is sufficient

20  that the Court find that the settlement was negotiated in good faith and is

21  reasonable, fair, and equitable. See *In re A & C Properties*, 784 F.2d at 1381; see

22  also *Redwood Trust v. Am. Budget Storage, LLC (In re Am. Bldg. Storage)*, 285

23  Fed. App'x. 375 (9th Cir. 2008);  *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 416–

24  17 (Bankr. N.D. Cal. 2004).

25  Consideration of a settlement does not require the court to determine

26  whether a settlement presented is the best one that could possibly have been

27  achieved. Rather, the court need only canvass the issues to determine whether the

28  settlement falls "below the lowest point in the zone of reasonableness." *In re Pac.*

*Gas & Elec. Co.*, supra, 304 B.R. at 417; see also *Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985). In assessing these general principles, courts will often look to the following factors, although a court need not find that all elements are satisfied in approving a settlement agreement:

> (a) the probability of successful litigation;

> (b) any impediments to collection;

> (c) the complexity, expense, inconvenience and delay of litigation; and

> (d) the interest of creditors with deference to their reasonable opinions.

*In re A & C Properties*, supra, 784 F.2d at 1381.

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). Further, it is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but rather to "canvas the issues and see whether the settlement falls below the lowest point of the range of reasonableness." *In re Heissenger Resources*, 67 B.R. 378, 383 (C.D. Ill. 1986).

**B. The Court Should Approve the Settlement Agreement Because it is Fair, Reasonable, and in the Best Interests of Creditors and the Debtor's Estate.**

The Trustee, in the exercise of her business judgment, has determined that it is in the best interests of the estate to resolve the foregoing disputes with the Taylor Parties. As set forth below, this settlement satisfies each of the Ninth Circuit's elements for approval of a settlement as set forth in *A & C Properties*.

**1. Probability of Successful Litigation**

**a.    The GGC Trust transfers.**

Based upon the schedule of the GGC loans and repayments prepared by an employee of Adam's real estate business entities and produced by Adam ,and

Adam's testimony at this creditors meetings, the Trustee asserts she has established a prima facie case that Adam repaid $200,493 of the $250,000 distribution and all of the $35,000 distribution received from the GGC Trust. The Trustee believes that such payments were fraudulent conveyances because Adam had no obligation to repay distributions to the Trust because they were income to Adam, not loans.

But this is not the end of the matter. After the Trustee raised the fraudulent conveyance issues with Adam's counsel, the GGC Trust had an accountant prepare another schedule of loans and repayments. That second schedule did not include as loans the $250,000 or $35,000 advances, which were shown as loans on the schedule Adam produced. This second schedule would apparently be the basis of a defense by the GGC Trust that the advances were not loans but really were distributions, and those distributions never got paid back. How this would ultimately be decided by this court would depend upon the credibility of the witnesses — all of whom, the Trustee contends, are controlled by Adam and the GGC Trust — and any additional documents the Trustee could obtain reflecting how these advances were characterized by the parties.

The GGC Trust disputes that it received any voidable transfers from Adam and asserts the evidence would refute the Trustee's contentions.

        **b.    The Cara transfer.**

The Trustee has an email from Adam's counsel stating that the $150,000 transfer to Cara was a fraudulent transfer. The Trustee requested additional documents regarding this transfer, but that request was shelved pending the outcome of this motion. But based upon this email and the testimony of Adam from his creditors' meeting, the Trustee believes that the estate has a likelihood of success on this issue. As a result of this settlement, the Trustee has not had any meaningful discussions with Cara or her attorney regarding this transfer and does not know what, if any, defenses Cara may assert.

### c.    The Objection to Discharge.

The Trustee had requested additional documents relevant to the discharge issue but, again, this request was suspended while the parties worked in good faith to settle this matter.  So the Trustee has not had an opportunity to test the strength of the evidence described in section I.B.3, which the Trustee suggests that Adam acted to hinder, defraud, or delay creditors in violation of 11 U.S.C. § 727(a)(2).  Adam disputes and denies that he committed actions with the requisite intend to hinder, defraud or delay creditors in violation of 11 U.S.C. § 727(a)(2).

The Trustee believes that Adam has failed to produce books and records from which his financial condition can be ascertained, which violates 11 U.S.C. § 727(a)(3).  The Trustee contends this is exemplified by the veracity of the GGC Trust loan schedule he produced and testified about, which materially differs from the second loan schedule the GGC Trust produced.  Adam disputes that he failed to produce books and records from which his financial condition can be ascertained. Adam submits that he voluntarily cooperated with the Trustee in her requests and, in good faith, produced more than 5,300 pages of documents to the Trustee.

The Trustee contends that she can also prove that some of Adam's material testimony at his creditors meeting was false, in violation of 11 U.S.C. § 727(a)(4), and that Adam failed to explain any deficiency of his assets to meet his liabilities, in violation of 11 U.S.C. § 727(a)(5). The Trustee contends that Adam is not conversant with his finances, is not aware of the details of his financial affairs and relies upon his experts.

Adam disputes these contentions and asserts he has fulfilled his obligations as a debtor, answered the Trustee's honestly and accurately to the best of his ability, and has sought to obtain and produced documentary information to assist the Trustee in fulfilling her duties as trustee.

The Trustee believes the issue will be one for trial as to whether Adam intentionally provided any false testimony or failed to explain a deficiency of assets.

**2. Impediments to Collection.**

Based upon the information from Adam's bankruptcy schedules, the Trustee believes the GGC Trust has ample assets to pay any judgment against it. In contrast, the Trustee is informed that Cara is unemployed, apparently has little or no assets, and is relying upon spousal and child support to pay her expenses. She is unlikely to be able to pay a judgment. And creditors may have a difficult time collecting material amounts from Adam if his discharge is denied. Adam primarily lives off the GGC spendthrift trust, and given his apparent lack of business acumen or even interest in his business affairs, it does not seem likely that he will enjoy any substantial future business success.

**3. The Complexity, Expense, Inconvenience and Delay of Litigation.**

The legal issues involved are not necessarily complex. But the factual issues are and will require substantial time and expense to litigate. The Trustee would have to incur a significant amount of fees and costs in pursuing the fraudulent conveyance actions against the GGC Trust and Cara and the objection to discharge. Such fees and costs would include engaging in extensive discovery, including taking an indeterminate number of depositions. The expense of this discovery will be even greater than normal because third party witnesses will have to be deposed in Illinois. Also, the Trustee would, in all likelihood, have to retain the services of a forensic accountant to act as an expert witness regarding the loans and repayments to the GGC Trust to get to the bottom of whether the advances were loans or disbursements and whether these advances were repaid. A trial of these matters, even the expeditious ones held by bankruptcy courts, would likely take three or four days.

- 14 -

**4. The Interest of Creditors with Deference to Their Reasonable Opinions.**

The Trustee's business judgment is that the Agreement is in the best interest of creditors because the only party that seems to have the ability to pay a judgment is the GGC Trust, and the estate is receiving $215,000 on account of claims against it totaling about $235,000.  Cara seems to be unable to pay any of the $150,000 judgment that might be recovered against her.  And if past practice and his performance at his creditors meetings is any guide, Adam will continue to live off his spendthrift trust and his family's largess, and the trust payments to him will be structured to make it difficult for creditors to collect anything.

There is a risk the Trustee could get nothing in a lawsuit against the GGC Trust and any recovery to creditors would be significantly reduced by large litigation expenses.

For all these reasons, the Trustee believes that approval of the Agreement is in the best interests of the estate.

III.    CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an Order:

1. Granting the Motion;

2. Approving the Agreement in the form as set forth in Exhibit A in an order substantially in the form and substance to the order attached hereto as Exhibit B;

3. Authorizing and directing the Trustee and the Taylor Parties to take any and all steps necessary to effectuate the Agreement;

4,  Enjoining creditors and other parties in interest from pursuing any of the Estate Released Claims; and

- 15 -

5. Providing such other and further relief as is just and proper.


DATED:  November 9, 2016

GRIFFITH & THORNBURGH, LLP


JOSEPH M. SHOLDER,
FELICITA A. TORRES, Attorneys
for Sandra K. McBeth, Trustee

### DECLARATION OF SANDRA K. MCBETH

Sandra K. McBeth declares:

1.      I am the duly appointed Chapter 7 trustee for Adam Taylor.

2.      I have personal knowledge of the facts stated in this declaration and could and would competently testify thereto if called upon to do so.

3.      Adam filed a petition for Chapter 7 bankruptcy relief on February 2, 2016.   My counsel and I examined Mr. Taylor at four section 341(a) hearings. We also reviewed hundreds of documents produced by Adam.  Those documents included the trust documents for the GGC Trust, the 1982 Gift Trust, and the 1992 Gift Trust, a schedule of loans made by the GGC Trust to Adam for use in Adam's real estate business entities and Adam's repayments of those loans, a schedule of Adam's expenditure of his personal funds prior to the petition date, and emails relating to Adam's pre-bankruptcy activities.  In addition to reviewing the trust documents for the GGC Trust, 1982 Gift Trust, and the 1992 Gift Trust, my counsel also obtained an analysis from professionals for the trustee of these trusts, which discussed the history of these trusts, their assets, and Adam's rights to distributions from them.

4.      Based upon those examinations and the review of the documents, I determined that it was unlikely that the estate had any realistic claims to the assets of the trusts.  The GGC Trust expressly includes a spendthrift provision.  The documents  my counsel and I received and reviewed show that Jeff Taylor, Adam's father and the trustee for the GGC Trust, exercised significant control over the trust funds so it seems unlikely that the estate could successfully argue that trust was not a valid spendthrift trust.  The analysis my counsel obtained from the lawyer for the 1982 Gift Trust, and the 1992 Gift Trust showed that these trusts either had minimal assets or that Adam had no right to those assets.

5.      The examinations and review of the documents have led me to conclude that the estate does have realistic claims against three parties:  the GGC

Trust; Cara Taylor —Adam's soon-to-be ex-wife —; and Adam. I describe those claims and their basis in the succeeding paragraphs of this declaration.

6.    The estate has fraudulent conveyance claims against the GGC Trust totaling approximately $235,000 based upon the following facts, which I have gleaned through Adam's testimony and documents he has produced. Pre-petition, Adam operated a real estate business through various entities. This business consisted primarily of buying and selling residential real property. The GGC Trust extended a $1.5 million line of credit to Adam to finance his real estate business. Adam would take the loan proceeds and re-loan them to one of his entities. When an entity sold a property, it repaid Adam from the loan proceeds and Adam then repaid the GGC Trust.

7.    I requested and received from Adam's counsel the schedule of the GGC loans and repayments prepared by an employee of Adam's real estate business entities to determine if any of the loan repayments were avoidable under the Bankruptcy Code. That loan schedule shows that the GGC Trust advanced $250,000 to Adam under the line of credit in February or March 2014, and that Adam loaned the $250,000 advance to one of his entities, MT Homes, which then used those funds to settle a claim with MT Home's lender. Adam subsequently repaid $200,493 of this advance to the GGC Trust. Although Adam's schedule of the GGC loans and repayments listed the $250,000 as a loan, Adam's amended statement of financial affairs told a different story. That statement characterized the $250,000 advance as distribution — income— and not a loan. Assuming that Adam's statement of financial affairs is correct, Adam received $250,000 of income from the GGC Trust and then gave back $200,493. Since the $250,000 was income and not an antecedent debt, Adam received no reasonably equivalent value for the $200,493 when he transferred it to the GGC Trust. If these are the facts, the $200,493 transfer is a fraudulent conveyance.

8.      A similar transfer occurred regarding the purchase of a property by Gliese Development, another of Adam's entities, of a property located at 1700 Herman.  The schedule of the GGC loans and repayments shows that on March 20, 2014, the GGC Trust advanced Adam $57,000 so Gliese could buy the Herman property.  The schedule also shows that this entire loan was repaid.  (It actually shows a repayment of $58,905).  But the amended statement of financial affairs lists $35,000 of this advance as a distribution to Adam.  The fraudulent conveyance analysis is the same: Adam gave back the $35,000 distribution to the GGC Trust but received no reasonably equivalent value for doing so since he was under no obligation to repay income he received from the GGC Trust.

9.      After my counsel and I raised the fraudulent conveyance issues with Adam's counsel, the GGC Trust had an accountant prepare another schedule of loans and repayments. That second schedule did not include as loans the $250,000 or $35,000, which were shown as loans on the schedule Adam produced.  This second schedule would apparently be the basis of a defense by the GGC Trust that the advances were not loans but really were distributions, and those distributions never got paid back.

10.      Adam's statement of financial affairs shows that he transferred $150,000 to Cara on September 4, 2014.  The estate's fraudulent transfer claim against Cara is based upon a pre-petition September 2014 email my counsel and I reviewed from Adam's counsel to Adam, which was subsequently forwarded by Adam to Jeff Taylor, his father and the trustee of the GGC Trust.  This email was produced by Adam in response to my request that he produce all correspondence between himself, the trusts in which he has or had an interest, and Jeff Taylor as the trustee of the GGC Trust.  In that email, Adam's counsel opines that this transfer to Cara was a fraudulent transfer.  At his creditor's meeting, Adam could not identify any value he received in exchange for that transfer.

11.    The estate's objection to discharge claims include claims that Adam acted to hinder, defraud or delay creditors, that he could not adequately explain his financial affairs, that he could not produce documents from which I could determine his financial condition, and that he was untruthful in his testimony at his creditor's meetings.

12.    There are three hinder-defraud-delay creditor claims.  First, Adam filed this case in part because the American Enterprise Bank and First Midwest Bank obtained judgments against him.  Before the judgments were entered, the documents Adam produced show that Adam received distributions from the GGC Trust directly into his bank account and then paid his expenses and creditors from his bank account.  The documents also show that after the banks got the judgments and commenced post-judgment proceedings, when Adam needed money, the GGC Trust paid his creditors directly so that the funds would not be deposited into Adam's account and subject to the banks' levy.  Emails my counsel and I reviewed from the trustee to the GGC Trust show that this change was done on the advice of counsel, apparently to hinder the banks' collection efforts.

13.    Second, after the banks got judgments, $75,000 was deposited in Adam's personal account.  My counsel and I have reviewed an email Adam produced in which he told his financial advisor that he couldn't have any money in his personal name and insisted that the $75,000 be removed from that account.  This email supports a claim that Adam was trying to hinder the banks' collection efforts.

14.    Third, a September 2014 email my counsel and I have reviewed, authored by one of Adam's bankruptcy lawyers, says that Adam's transfer of $150,000 to Cara was a fraudulent transfer and could serve as the basis for an objection to his discharge.

15.    The other objection to discharge claims are based upon Adam's inability to explain his financial affairs during his four, hours-long creditors examinations.  His tactic was to present me with documents purporting to explain his assets and liabilities, but when my counsel and I asked questions about the information contained in those documents, Adam testified that he relied upon his advisors to prepare the documents and couldn't answer our questions.  Adam used this tactic even when examined about portions of his bankruptcy schedules and statement of financial affairs that he had signed under penalty of perjury.  Adam's testimony was also contradictory and untruthful on a number of material issues.  And finally, documents Adam produced — like the schedule of loans from and repayments to the GGC Trust — at least according to the GGC Trust, do not accurately represent those loans and repayments.

16.    After analyzing the documents Adam has produced to date and his testimony, in the exercise of my business judgment, I believe that the compromise set forth in the settlement agreement is in the best interest of creditors and this estate for the following reasons.

17.    As set forth in the motion, Adam and the GGC Trust vigorously contest the estate's claims in this case.  To further explore these claims, I had requested that Adam and others produce additional documents relevant to the discharge and fraudulent conveyance issues, but those requests were shelved while the parties began working in good faith to settle this matter.  That additional evidence could bolster or weaken the claims the estate will assert against Adam, Cara and the GGC Trust so I do not know with any certainty whether the estate might prevail on these claims.  But it is clear that Adam and the GGC Trust vigorously contest these claims and will strenuously defend them so regardless of the evidence the estate will be put to its burden of proof if these matters are tried.

18.    Based upon the information from Adam's bankruptcy schedules, I believe that the GGC Trust has ample assets to pay any judgment against it.  In

- 21 -

contrast, I have been informed that Cara is unemployed, apparently has little or no assets, and is relying upon spousal and child support to pay her expenses. She is unlikely to be able to pay a judgment. Based upon the documents I have received from Adam and his testimony, I also believe that creditors may have a difficult time collecting material amounts from Adam if his discharge is denied. Adam primarily lives off the GGC spendthrift trust, and given his apparent lack of business acumen or even interest in his business affairs, it does not seem likely that he will enjoy any substantial future business success.

19.     The legal issues involved are not necessarily complex. But the factual issues are and will require substantial time and expense to litigate. The estate would have to incur a significant amount of fees and costs in pursuing the fraudulent conveyance actions against the GGC Trust and Cara and the objection to discharge. Such fees and costs would include engaging in extensive discovery, including taking an indeterminate number of depositions. The expense of this discovery will be even greater than normal because third party witnesses will have to be deposed in Illinois. Also, the estate would, in all likelihood, have to retain the services of a forensic accountant to act as an expert witness regarding the loans and repayments to the GGC Trust to get to the bottom of whether the advances were loans or disbursements and whether these advances were repaid. A trial of these matters, even the expeditious ones held by bankruptcy courts, would likely take three or four days.

20.     Based upon these factors, my business judgment is that the proposed compromise is in the best interest of creditors because the only party that seems to have the ability to pay a judgment is the GGC Trust, and the estate is receiving $215,000 on account of claims against it totaling about $235,000. Cara seems to be unable to pay any of the $150,000 judgment that might be recovered against her. And if past practice and his performance at his creditors meetings is any guide, Adam will continue to live off his spendthrift trust and his family's largess,

1  and the trust payments to him will be structured to make it difficult for creditors

2  to collect anything.  Additionally, there is a risk the estate could get nothing in a

3  lawsuit against the GGC Trust and a certainty that any recovery to creditors

4  would be significantly reduced by large litigation expenses.

5      I declare under penalty of perjury that the foregoing is true and correct.

6  Dated this _9_ day of November, 2016, at Santa Maria, CA.

7

8  *Sandra K. McBeth*

9  Sandra K. McBeth

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement (the "Agreement") is entered into this ___ day of November, 2016, by and between Sandra K. McBeth, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Adam Taylor (the "Estate"); Adam Taylor, individually and in his capacity as a debtor in the bankruptcy case defined below (the "Debtor"); the GGC Trust for Adam Taylor U/A/D 12/1/08 (the "GGC Trust"); the Taylor Annual Gift Trust for Adam Taylor U/A/D 12/14/82 (the "1982 Gift Trust"); the Taylor 1992 Annual Gift Trust for Adam Taylor U/A/D 12/17/92 (the "1992 Gift Trust"); and Jeff Taylor, as trustee for the GGC Trust, the 1982 Gift Trust and the 1992 Gift Trust ("Jeff"). The Debtor, the GGC Trust, the 1982 Gift Trust, the 1992 Gift Trust, and Jeff are collectively referred to as the "Taylor Parties." The Trustee and the Taylor Parties are collectively referred to as the "Parties."

## Recitals

**A.    WHEREAS**, on or about April 7, 2014, the Debtor filed a Petition for Dissolution of Marriage and on or about April 10, 2014, Cara Taylor ("Cara") filed a Counter-Petition for Dissolution of Marriage. The petitions for dissolution of marriage remain pending before the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois as case number 14-D-653.

**B.    WHEREAS**, on February, 2, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court"), thereby commencing Case Number 9:16-bk-10191-PC (the "Bankruptcy Case");

**C.    WHEREAS**, the Trustee is the duly appointed trustee for the Estate;

**D.    WHEREAS**, pursuant to 11 U.S.C. § 323, the Trustee is the "representative of the estate" and "has capacity to sue and be sued";

**E.    WHEREAS**, among the duties of the Trustee, which are set out in 11 U.S.C. § 704, is the obligation to "collect and reduce to money the property of the estate for which the trustee serves and close such estate as expeditiously as is compatible with the best interests of parties in interest";

**F.    WHEREAS**, the Debtor filed bankruptcy schedules on February 2, 2016 [Dkt. No. 5] (the "Schedules");

**G.    WHEREAS**, the Debtor identified on schedule A/B(25) of the Schedules beneficial interests (the "Beneficial Interests") in and to various spendthrift trusts (collectively, the "Spendthrift Trusts");

**H.    WHEREAS**, the Debtor has two minor children whom are also beneficiaries of the GGC Trust, the 1982 Trust, and the 1992 Trust;

**I.    WHEREAS**, the Trustee examined the Debtor on four (4) separate occasions as part of a lengthy continued meeting of creditors pursuant to 11 U.S.C. § 341;

765709

1

**J.**       **WHEREAS**, the Trustee requested, received and reviewed numerous documents from the Debtor and the Taylor Parties relating to the Debtor's financial affairs, assets and the Spendthrift Trusts;

**K.**       **WHEREAS**, the Trustee has conducted an investigation of claims that the Trustee could pursue on behalf of the Estate against the Taylor Parties and against Cara, including but not limited to claims for the avoidance of preferential transfers under 11 U.S.C. § 547(b), the avoidance of fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and (B) and 544(b) and the California Uniform Fraudulent Transfer Act, turnover and accounting under 11 U.S.C. § 542, breach of fiduciary duties, and claims related to the Spendthrift Trusts;

**L.**       **WHEREAS**, the deadline for creditors to either file a complaint seeking to determine their debts are non-dischargeable under 11 U.S.C. § 523 or objecting to the Debtor receiving a discharge under 11 U.S.C. § 727 (the "523/727 Deadline") expired on May 20, 2016;

**M.**       **WHEREAS**, no creditors sought to extend the 523/727 Deadline and no creditors filed a complaint on or before the 523/727 Deadline;

**N.**       **WHEREAS**, the deadline for the Trustee and the United States Trustee (the "UST"), and only the Trustee and the UST, to file a complaint objecting to the Debtor receiving a discharge under 11 U.S.C. § 727 was extended by agreement of the Debtor through and including December 13, 2016;

**O.**       **WHEREAS**, the Trustee believes there are various causes of action she could pursue against the Taylor Parties and against Cara, including avoidance of fraudulent transfers, possible objection to the Debtor's discharge under 11 U.S.C. § 727, and seeking a determination under 11 U.S.C. § 541 that the Beneficial Interests and/or the corpus of the Spendthrift Trusts constitute property of the Estate or that the Estate has any interest therein;

**P.**       **WHEREAS**, the Taylor Parties contend that neither the Beneficial Interests nor the corpus of the Spendthrift Trusts are property of the Estate and are excluded from the Estate pursuant to Illinois law and 11 U.S.C. § 541(c)(2);

**Q.**       **WHEREAS**, the Taylor Parties deny there are any meritorious causes of action the Trustee could pursue against them and nothing contained herein or as a result hereof shall be deemed or construed to be an admission of liability by the Taylor Parties of any kind or nature to the Trustee, or the existence or adjudication of facts which would give rise to such liability;

**R.**       **WHEREAS**, the Parties hereto desire to fully and finally resolve each and every matter of whatever kind or nature which may exist between;

**S.**       **WHEREAS**, the Parties have engaged in arms-length settlement negotiations, and now wish to: (i) avoid the expense, delay, risk and uncertainty in further litigation by resolving, settling and compromising any and all claims and disputes between them; and (ii)

765709

effectuate a global resolution which will allow for the prompt administration of the Bankruptcy Case, all in accordance with the terms and conditions set forth below;

**T.**    **WHEREAS**, each of the Parties has selected or has had the opportunity to consult with counsel of his, her or its respective choice in connection with all matters related to this Agreement;

**U.**    **WHEREAS**, each of the Parties to this Agreement agrees to bear his, her or its own costs and expenses, including attorneys' fees and costs, arising out of the Bankruptcy Case and all other matters related to this Agreement, except as provided in paragraph 11 below;

**V.**    **WHEREAS**, each of the Parties acknowledge that they are receiving a substantial and valuable benefit if the settlement contained herein is consummated.

**NOW, THEREFORE**, for good and valuable consideration, including, but not limited to the releases and other consideration provided for herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows:

1.    <u>Recitals Incorporated</u>.

The recitals set forth above constitute an integral part of this Agreement, evidencing the intent of the Parties in executing this Agreement, and describing the circumstances surrounding its execution. Accordingly, said recitals are, by express reference made a part of the covenants hereof, and this Agreement shall be construed in the light thereof.

2.    <u>Settlement Payment</u>.

The Taylor Parties shall cause a payment in the amount of Two Hundred Fifteen Thousand Dollars ($215,000) (the "<u>Settlement Amount</u>") to be made to the Trustee, as hereinafter provided, in exchange for, among the other consideration provided in this Agreement, releases to each of the Taylor Parties and to Cara from and against any and all claims of any kind or nature of the Trustee and the Estate as provided in paragraph 8(a) below.

3.    <u>Timing of Settlement Payment</u>.

Cash Payment to the Estate. Within 3 business days of the Final Settlement Approval Date (as defined in paragraph 4(a) below), the Taylor Parties shall deposit the Settlement Amount in a non-interest bearing trust account maintained by Adelman & Gettleman, Ltd., counsel for the Debtor. Counsel for the Debtor shall provide the Trustee with proof of the deposited amount upon receipt of same. Counsel for the Debtor shall distribute the Settlement Amount to the Trustee within 3 business days of the Settlement Effective Date (as defined in paragraph 4(b) below) (the "<u>Settlement Payment Date</u>"). If the Settlement Effective Date does not occur by February 28, 2017, unless otherwise agreed by all of the Parties, counsel for the Debtor shall return the Settlement Amount held in escrow to the remitter thereof and this Agreement shall be null and void.

3

4.    Court Approval Required.

a.    Except with respect to the obligation of the Trustee to file the motion approving this settlement set forth in paragraph 4(b) below, this Agreement shall be of no force and effect unless and until: (i) the Court enters an order in the Bankruptcy Case approving this Agreement substantially in form and substance to the proposed order attached hereto as Exhibit A (the "Settlement Approval Order"); (ii) the Settlement Approval Order has become final and is no longer subject to appeal (the "Final Settlement Approval Date"); and (iii) the deadline for the UST to object to the Debtor receiving a discharge under 11 U.S.C. § 727 has expired without the UST having filed an objection to the Debtor receiving a discharge (the "727 Expiration Date").

b.    No later than ten (10) days after execution of this Agreement and after the review and consent of the Taylor Parties, the Trustee shall file a motion pursuant to Fed. R. Bankr. P. 9019 (the "Settlement Motion") in the Bankruptcy Case for approval of this Agreement and entry of the Settlement Approval Order. Except to the extent another date is specified with respect to the effectiveness of a particular provision of this Agreement, this Agreement shall take effect on the later of (i) the first day following the Final Settlement Approval Date and (ii) the first day following the 727 Expiration Date (the "Settlement Effective Date").

5.    Creditor Injunction and Findings.

Notwithstanding anything contained in paragraph 18 below or elsewhere in this Agreement, this Agreement will not become effective and will not be binding upon the Taylor Parties under any circumstances if the Settlement Approval Order does not include findings and an injunction in sum and substance identical to the following:

"(i)    The Estate Released Claims constitute the exclusive property of the Estate and the Trustee holds the sole and exclusive standing to seek recovery on account of the Estate Released Claims.

(ii)    **ALL PERSONS (AS DEFINED IN SECTION 101(41) OF THE CODE) INCLUDING THE TRUSTEE AND ALL CREDITORS OF THE DEBTOR ARE HEREBY PERMANENTLY BARRED, ENJOINED, AND RESTRAINED FROM COMMENCING, PROSECUTING, OR ASSERTING ANY ACTION OR PROCEEDING AGAINST THE TAYLOR PARTIES ON ACCOUNT OF, OR WITH RESPECT TO, ANY OF THE ESTATE RELEASED CLAIMS.**"

6.    Representations and Warranties.

a.    Authority. Each of the undersigned covenants and warrants that he or she has the power and authority to execute this Agreement on behalf of the Party on whose behalf this Agreement is so executed. Each person whose signature is affixed hereto in a representative capacity represents and warrants that he or she is authorized and empowered to execute this Agreement on behalf of, and to bind, the person or entity on whose behalf his or her signature is

4

765709

affixed, provided, however, that the Trustee's authority is subject to approval by the Court in the Bankruptcy Case.

        b.    <u>Advice of Counsel.</u> Each of the Parties acknowledges and warrants that it has consulted with its attorneys regarding the terms of this Agreement, and that they have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise, settlement and waiver of any and all claims as set forth herein.

        c.    <u>Due Diligence.</u> Each of the Parties has investigated the matters set forth in this Agreement, and all other matters pertaining to this Agreement. Each of the Parties acknowledges and warrants that it is not relying upon any statement or representation made by the Parties or their counsel, except those expressly set forth in this paragraph 6, in deciding whether to enter into this Agreement.

7.    <u>Disallowance of Claims.</u>

The Taylor Parties stipulate and consent to the disallowance of any and all claims filed by them against the Estate.

8.    <u>Releases.</u>

        a.    <u>Release of Taylor Parties and Cara by the Estate.</u> Subject to, and conditioned upon, the receipt of the Settlement Amount, the Trustee on her behalf and on behalf of the Estate, and each of her agents, representatives, successors and assigns (collectively, the "<u>Estate Releasors</u>"), hereby unconditionally, absolutely and irrevocably release and discharge the Taylor Parties, Jeff Taylor, Cara Taylor and each of their respective agents, representatives, heirs, successors and assigns (collectively, the "<u>Taylor Releasees</u>"), with respect to all manners of action, causes of action, suits, debts, accounts, promises, warranties, damages and consequential damages, demands, agreements, costs, expenses, claims or demands whatsoever, of any kind or nature whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent, inchoate or matured, in law or in equity which the Estate Releasors now have, ever had or may have against the Taylor Releasees upon or by reason of any manner, cause or thing whatsoever on or at any time prior to the date of this Settlement Agreement, including any and all claims for the avoidance of preferential transfers under 11 U.S.C. § 547(b), the avoidance of fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and (B) and 544(b) and the California Uniform Fraudulent Transfer Act, turnover and accounting under 11 U.S.C. § 542, breach of fiduciary duties, denying the Debtor a discharge under 11 U.S.C. § 727, and seeking a determination that under 11 U.S.C. § 541 that the Beneficial Interests and/or the corpus of the Spendthrift Trusts constitute property of the Estate or that the Estate has any interest therein (collectively, the "<u>Estate Released Claims</u>"), it being the intention of the Estate Releasors to reserve nothing whatsoever hereunder and to assure the Taylor Releasees, and each of them, their peace and freedom from each and every of the Estate Released Claims of whatever character and description provided, however, nothing contained in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Settlement Agreement.

        b.    <u>Release of the Estate by the Taylor Parties.</u> Subject to, and conditioned upon, the Trustee's receipt of the Settlement Amount, the Taylor Parties, on behalf of

5

765709

themselves, their respective agents, representatives, heirs, successors and assigns (collectively, the "Taylor Releasors"), hereby release and discharge the Trustee, the Estate and their respective agents, representatives, successors and assigns (collectively, the "Estate Releasees"), with respect to all manners of action, causes of action, suits, debts, accounts, promises, warranties, damages and consequential damages, demands, agreements, costs, expenses, claims or demands whatsoever, of any kind or nature whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent, inchoate or matured, in law or in equity which the Taylor Releasors now have, ever had or may have against the Estate Releasees upon or by reason of any manner, cause or thing whatsoever on or at any time prior to the date of this Settlement Agreement (collectively, the "Taylor Released Claims"), it being the intention of the Taylor Releasors to reserve nothing whatsoever hereunder and to assure the Estate Releasees, and each of them, their peace and freedom from each and every of the Taylor Released Claims of whatever character and description provided, however, nothing contained in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Settlement Agreement.

9.    Waiver of Civil Code § 1542.

The Parties hereby expressly waive the provisions of § 1542 of the Civil Code of the State of California, which reads as follows:

**"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

The Parties expressly represent, acknowledge and agree that they have been advised by independent legal counsel of the contents and effect of the subject provision and with such knowledge hereby waive whatever benefit they may otherwise have or have had pursuant to such provision. The Parties hereto agree that they knowingly and voluntarily waive the provisions of California Civil Code § 1542 as an essential and material term of this Agreement, and acknowledge that without such a waiver, the other parties would not have entered into this Agreement.

10.    No Admission of Liability.

Nothing contained in this Settlement Agreement shall be deemed as an admission of any liability or lack of merit in any claim, by any party of any matter, claim or defense previously in dispute. Each party is aware that it may hereafter discover claims or facts in addition to or different from those it now knows or believes to be true. Nevertheless, it is the intention of the parties to fully, finally and forever settle and release any and all controversies among themselves, and all claims relative thereto, that do now exist or heretofore have existed between them, as more fully set forth in paragraph 8 hereof. In furtherance of such intention, the releases given herein shall be and remain in effect as a full and complete release of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto.

6

765709

11.    <u>Attorneys' Fees and Costs</u>.

Each of the Parties agree to be solely responsible for their own respective attorneys' fees and expenses incurred in connection with the subject matter hereof, the settlement, and the preparation and performance of this Agreement; provided, however, that in the event that any dispute between the Parties relating to this Agreement should result in any action or proceeding, the prevailing party or parties shall be reimbursed by the losing party or parties for all reasonable costs and attorneys' fees, including but not limited to attorneys' fees incurred in the course of appeal.

12.    <u>Joint Drafting</u>.

Each of the Parties has been fully and competently represented by counsel of his, her or its own choosing in the negotiation and drafting of this Agreement. Accordingly, the Parties Agree that no rule of construction resolving contractual ambiguities against the drafting party shall be applicable. The Parties agree to cooperate in the drafting and execution of any and all additional documents necessary to effectuate the purpose and intent of this Agreement.

13.    <u>Integration</u>.

This Agreement constitutes the entire agreement between the Parties relating to the subject matter hereof and is the final and complete expression of their intent. No prior or contemporaneous negotiations, promises, agreements, covenants, or representations of every kind or nature, whether made orally or in writing, have been made, or relied upon by the Parties, or any of them, in negotiations leading to this Agreement or relating to the subject matter hereof, which are not expressly contained herein, or which have not become merged and finally integrated herein; it being the intention of the Parties hereto that in the event of any subsequent litigation, controversy, or dispute concerning the terms and provisions of this Agreement, then in any such event, no party shall be permitted to offer or introduce oral or extrinsic evidence concerning the terms and conditions hereof that are not included or referred to herein and not reflected in writing.

14.    <u>Writing Required</u>.

Neither this Agreement nor any term or provision hereof may be changed, waived, discharged or terminated except by an instrument in writing duly signed and agreed to by the Parties hereto (or their successors in interest).

15.    <u>Governing Law</u>.

The Parties agree that this Agreement shall be construed and governed by the provisions of the Bankruptcy Code and other applicable federal law and, to the extent state law is applicable, the internal laws of the State of Illinois, without giving effect to choice of law provisions.

7

765709

16.    Notice.

All notices given pursuant to this Agreement shall be delivered by first class mail, hand delivery or telecopy to the Parties at the following addresses (or, if applicable, the most current address available for such Party):

If to the Trustee:

Joseph M. Sholder, Esq.
Griffith & Thornburgh, LLP
8 E. Figueroa Street, Suite 300
Santa Barbara, CA 93101

If to the Debtor:

Peter Susi, Esq.
Hollister & Brace
A Professional Corporation
1126 Santa Barbara Street
Santa Barbara, CA 93101

- and -

Steven B. Chaiken, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Boulevard, Suite 1050
Chicago, IL 60604

If to Jeff, the GGC Trust, the 1982 Gift Trust, or the 1992 Gift Trust:

Stanley H. Meadows, P.C.
McDermott Will & Emery LLP
227 West Monroe St.
Chicago, IL 60606

17.    Binding Effect and Third Party Beneficiaries.

The terms and conditions of this Agreement, the Settlement Approval Order shall, without further act, notice, deed or court order, be fully binding and enforceable upon and inure to the benefit of predecessors, successors, assigns, legal representatives and trustees of the Parties hereto and of Jeff Taylor, individually, and Cara Taylor, including, without limitation, any subsequently appointed trustee in the Bankruptcy Case or any subsequently filed bankruptcy case by or against the Debtor. Jeff Taylor and Cara Taylor are direct and intended beneficiaries of this Agreement.

8

18.    <u>Severability</u>.

Except as set forth in paragraph 5 in this Agreement, in the event that any one or more provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

19.    <u>Further Assurances</u>.

The Parties, and each of them, covenant and agree that, from and after the execution and delivery of this Agreement, they shall, from time to time, execute and deliver any and all documents and instruments as are reasonably necessary or requested by the other Parties to carry out the intent of this Agreement.

20.    <u>Headings</u>.

Paragraph headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of the Agreement, and shall not define or affect the meaning, construction, or scope of any of the provisions of this Agreement.

21.    <u>Counterparts</u>.

This Agreement may be signed in two or more original counterparts, each of which shall for all purposes be considered an original of this Agreement. Counterparts that are provided via facsimile, in PDF format, or containing copied signatures, are all sufficient and shall be treated in all manner and respects as an original signature.

*Signature pages to follow.*

9

765709

IN WITNESS WHEREOF, the Parties hereto, each by persons duly authorized, have

caused the Agreement to be executed on the dates indicated below.

**Sandra K. McBeth, not individually, but as Chapter 7 trustee for the bankruptcy estate of Adam Taylor**

By: _Sandra K McBeth_

Sandra K. McBeth, Trustee

Date: _Nov. 9, 2016_

**Adam Taylor**

_Adam Taylor_

Date: 11/9/2016

**Jeff Taylor, as trustee for the GGC Trust, the 1982 Trust and the 1992 Trust**

_____

Date: _____

**The GGC Trust for Adam Taylor U/A/D 12/1/08**

By: _____

Jeff Taylor, Its trustee

Date: _____

**The Taylor Annual Gift Trust for Adam Taylor U/A/D 12/14/82**

By: _____

Jeff Taylor, Its trustee

Date: _____

**The Taylor Annual Gift Trust for Adam Taylor U/A/D 12/17/92**

By: _____

Jeff Taylor, Its trustee

Date: _____

10

765709

IN WITNESS WHEREOF, the Parties hereto, each by persons duly authorized, have

caused the Agreement to be executed on the dates indicated below.

**Sandra K. McBeth, not individually, but as Chapter 7 trustee for the bankruptcy estate of Adam Taylor**

By: _____
       Sandra K. McBeth, Trustee

Date: _____

**Adam Taylor**

_____

Date: _____

**Jeff Taylor, as trustee for the GGC Trust, the 1982 Trust and the 1992 Trust**

Date: 11/8/16

**The GGC Trust for Adam Taylor U/A/D 12/1/08**

By: _____
     Jeff Taylor, Its trustee

Date: 11/8/16

**The Taylor Annual Gift Trust for Adam Taylor U/A/D 12/14/82**

By: _____
     Jeff Taylor, Its trustee

Date: 11/8/16

**The Taylor Annual Gift Trust for Adam Taylor U/A/D 12/17/92**

By: _____
     Jeff Taylor, Its trustee

Date: 11/8/16

10

765709

**Exhibit A to Settlement and Release Agreement**

Settlement Approval Order

1   Joseph M. Sholder, Bar No. 126347              (SPACE BELOW FOR FILING STAMP ONLY)
  Felicita A. Torres, Bar No. 298630
2   GRIFFITH & THORNBURGH, LLP
  8 East Figueroa Street, Suite 300
3   Santa Barbara, CA  93101
  Telephone:   (805) 965-5131
4   Facsimile:   (805) 965-6751

5   Attorneys for the Chapter 7 Trustee

6

7

8             **UNITED STATES BANKRUPTCY COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

11   In re              )   BK No. 9:16-bk-10191-PC

                    )

12                   )   Chapter 7

  ADAM TAYLOR,        )

13                   )   **ORDER AND FINDINGS OF FACT**

                    )   **AND CONCLUSIONS OF LAW**

14           Debtor.    )   **APPROVING SETTLEMENT UNDER**

                    )   **BANKRUPTCY RULE 9019**

15                   )

                    )

16                   )

17

18       THIS MATTER COMING TO BE HEARD upon the Motion[1] of Sandra K. McBeth,

19 not individually, but as the chapter 7 trustee (the "Trustee") for the estate of Adam Taylor (the

20 "Debtor"), for entry of an order, pursuant to Federal Rule of Bankruptcy Procedure 9019,

21 authorizing the Trustee to enter into a settlement with the Taylor Parties; after considering the

22 Motion, the pleadings, statements of counsel, any responses and objections, the evidence

23 adduced, and for the reasons set forth herein, and for any reasons stated orally in open court,

24 the Court hereby overrules any objections and grants the Motion. Accordingly,

25

26

27   [1] Capitalized terms not defined herein shall have the meaning given to them in the Trustee's

28 Motion for Order Approving Settlement (the "Motion").

765886

1    **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT**

2    **AND CONCLUSIONS OF LAW:**

3          A.      This court has jurisdiction to hear and determine the Motion pursuant to 28

4    U.S.C. §§ 157 and 1334. This Motion presents a core proceeding pursuant to 28 U.S.C. §§

5    157(b)(2)(A), (B), and (O).

6          B.      Notice of the Motion constitutes due, sufficient and timely notice to all persons

7    entitled thereto in accordance with the requirements of the Bankruptcy Code, the Federal Rules

8    of Bankruptcy Procedure, the Local Rules of this Court, and of due process. No other or further

9    notice of the Motion or of this Order is necessary.

10         C.      The Trustee and the Taylor Parties negotiated at arm's length and in good faith

11   to reach agreement on the matters resolved through the Settlement Agreement.

12         D.      The compromises contained in the Settlement Agreement are fair, reasonable

13   and adequate, in the best interests of the Debtor's estate, a valid and proper exercise of the

14   Trustee's business judgment, and represent an exchange for reasonably equivalent value.

15         E.      The Settlement Agreement confers a substantial benefit upon the Debtor's

16   estate, by, among other things, providing for: (i) the settlement of potential litigation; and (ii)

17   the payment of the Settlement Payment.

18         F.      The benefits, promises and consideration that the Taylor Parties are to provide

19   under the Settlement Agreement are fair, equitable and adequate consideration for the releases

20   provided under the Settlement Agreement.

21         G.      The Trustee has full power and authority to enter into and perform the

22   Settlement Agreement and all other documents contemplated thereby.

23         H.      The Estate Released Claims constitute the exclusive property of the estate and

24   the Trustee holds the sole and exclusive standing to seek recovery on account of the Estate

25   Released Claims.[2]

26   

27   [2] The Estate Released Claims consist of all manners of action, causes of action, suits, debts,

28   accounts, promises, warranties, damages and consequential damages, demands, agreements,

costs, expenses, claims or demands whatsoever, of any kind or nature whether known or

765886

I.      The Settlement reflected in the Settlement Agreement was negotiated and reached in good faith.

J.      Based on the findings set forth above, the Court hereby concludes as a matter of law that (i) the Settlement satisfies the legal requirements of Bankruptcy Rule 9019; and (ii) the Trustee is legally authorized to enter into and perform the Settlement Agreement and take any and all actions necessary to authorize and approve the Settlement Agreement and the transactions contemplated thereby.

K.      To the extent any of the above findings of fact are conclusions of law they shall be treated as such. To the extent any of the above conclusions of law are findings of fact they shall be treated as such.

**IT IS HEREBY ORDERED:**

1.      The Motion is granted in all respects.

2.      The Settlement Agreement attached as Exhibit A to the Motion is approved in all respects.

3.      The Trustee is hereby authorized, empowered and directed to enter into the Settlement Agreement.

4.      The release of the Estate Released Claims by the Estate Releasors is approved.

---

unknown, liquidated or unliquidated, disputed or undisputed, contingent, inchoate or matured, in law or in equity which the Estate Releasors now have, ever had or may have against the Taylor Releasees upon or by reason of any manner, cause or thing whatsoever on or at any time prior to the date of this Settlement Agreement, including any and all claims for the avoidance of preferential transfers under 11 U.S.C. § 547(b), the avoidance of fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and (B) and 544(b) and the California Uniform Fraudulent Transfer Act, turnover and accounting under 11 U.S.C. § 542, breach of fiduciary duties, denying the Debtor a discharge under 11 U.S.C. § 727, and seeking a determination that under 11 U.S.C. § 541 that the Beneficial Interests and/or the corpus of the Spendthrift Trusts constitute property of the estate or that the Estate has any interest therein.

765886

5.      The Trustee is authorized to execute any other documentation and perform such other ministerial tasks as may be necessary to effect the Settlement Agreement.

6.      **ALL PERSONS (AS DEFINED IN SECTION 101(41) OF THE CODE) INCLUDING THE TRUSTEE AND ALL CREDITORS OF THE DEBTOR ARE HEREBY PERMANENTLY BARRED, ENJOINED, AND RESTRAINED FROM COMMENCING, PROSECUTING, OR ASSERTING ANY ACTION OR PROCEEDING AGAINST THE TAYLOR PARTIES ON ACCOUNT OF, OR WITH RESPECT TO, ANY OF THE ESTATE RELEASED CLAIMS** (the "Injunction").

7.      The Court shall retain jurisdiction with respect to all matters arising from or relation to the implementation of this Order and the Settlement Agreement, including to adjudicate any and all issues concerning either the Injunction or the determination that the Beneficial Interests or the Spendthrift Trusts constitute property of the Estate.

# # #

765886

| | |
|---|---|
| 1 | Joseph M. Sholder, Bar No. 126347 |
| | Felicita A. Torres, Bar No. 298630 |
| 2 | GRIFFITH & THORNBURGH, LLP |
| | 8 East Figueroa Street, Suite 300 |
| 3 | Santa Barbara, CA  93101 |
| | Telephone:  (805) 965-5131 |
| 4 | Facsimile:   (805) 965-6751 |

(SPACE BELOW FOR FILING STAMP ONLY)

5    Attorneys for the Chapter 7 Trustee

6

7

8                           **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

| | | |
|---|---|---|
| 11 | In re | ) BK No. 9:16-bk-10191-PC |
| | | ) |
| 12 | | ) Chapter 7 |
| | ADAM TAYLOR, | ) |
| 13 | | ) **ORDER AND FINDINGS OF FACT** |
| | | ) **AND CONCLUSIONS OF LAW** |
| 14 | Debtor. | ) **APPROVING SETTLEMENT UNDER** |
| | | ) **BANKRUPTCY RULE 9019** |
| 15 | | ) |
| | | ) |
| 16 | | ) |
| | | ) |

17

18    THIS MATTER COMING TO BE HEARD upon the Motion[1] of Sandra K. McBeth,

19    not individually, but as the chapter 7 trustee (the "Trustee") for the estate of Adam Taylor (the

20    "Debtor"), for entry of an order, pursuant to Federal Rule of Bankruptcy Procedure 9019,

21    authorizing the Trustee to enter into a settlement with the Taylor Parties; after considering the

22    Motion, the pleadings, statements of counsel, any responses and objections, the evidence

23    adduced, and for the reasons set forth herein, and for any reasons stated orally in open court,

24    the Court hereby overrules any objections and grants the Motion. Accordingly,

25

26    _____

27    [1] Capitalized terms not defined herein shall have the meaning given to them in the Trustee's

28    Motion for Order Approving Settlement (the "Motion").

765886

1    **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT**

2    **AND CONCLUSIONS OF LAW:**

3          A.     This court has jurisdiction to hear and determine the Motion pursuant to 28

4    U.S.C. §§ 157 and 1334. This Motion presents a core proceeding pursuant to 28 U.S.C. §§

5    157(b)(2)(A), (B), and (O).

6          B.     Notice of the Motion constitutes due, sufficient and timely notice to all persons

7    entitled thereto in accordance with the requirements of the Bankruptcy Code, the Federal Rules

8    of Bankruptcy Procedure, the Local Rules of this Court, and of due process. No other or further

9    notice of the Motion or of this Order is necessary.

10          C.     The Trustee and the Taylor Parties negotiated at arm's length and in good faith

11    to reach agreement on the matters resolved through the Settlement Agreement.

12          D.     The compromises contained in the Settlement Agreement are fair, reasonable

13    and adequate, in the best interests of the Debtor's estate, a valid and proper exercise of the

14    Trustee's business judgment, and represent an exchange for reasonably equivalent value.

15          E.     The Settlement Agreement confers a substantial benefit upon the Debtor's

16    estate, by, among other things, providing for: (i) the settlement of potential litigation; and (ii)

17    the payment of the Settlement Payment.

18          F.     The benefits, promises and consideration that the Taylor Parties are to provide

19    under the Settlement Agreement are fair, equitable and adequate consideration for the releases

20    provided under the Settlement Agreement.

21          G.     The Trustee has full power and authority to enter into and perform the

22    Settlement Agreement and all other documents contemplated thereby.

23          H.     The Estate Released Claims constitute the exclusive property of the estate and

24    the Trustee holds the sole and exclusive standing to seek recovery on account of the Estate

25    Released Claims.[2]

26    _____

27    [2] The Estate Released Claims consist of all manners of action, causes of action, suits, debts,

28    accounts, promises, warranties, damages and consequential damages, demands, agreements,

costs, expenses, claims or demands whatsoever, of any kind or nature whether known or

765886

1         I.       The Settlement reflected in the Settlement Agreement was negotiated and

2  reached in good faith.

3         J.       Based on the findings set forth above, the Court hereby concludes as a matter of

4  law that (i) the Settlement satisfies the legal requirements of Bankruptcy Rule 9019; and (ii) the

5  Trustee is legally authorized to enter into and perform the Settlement Agreement and take any

6  and all actions necessary to authorize and approve the Settlement Agreement and the

7  transactions contemplated thereby.

8         K.       To the extent any of the above findings of fact are conclusions of law they shall

9  be treated as such. To the extent any of the above conclusions of law are findings of fact they

10  shall be treated as such.

11        **IT IS HEREBY ORDERED:**

12  1.       The Motion is granted in all respects.

13  2.       The Settlement Agreement attached as Exhibit A to the Motion is approved in all

14  respects.

15  3.       The Trustee is hereby authorized, empowered and directed to enter into the Settlement

16  Agreement.

17  4.       The release of the Estate Released Claims by the Estate Releasors is approved.

18

19

20  unknown, liquidated or unliquidated, disputed or undisputed, contingent, inchoate or matured,

21  in law or in equity which the Estate Releasors now have, ever had or may have against the

22  Taylor Releasees upon or by reason of any manner, cause or thing whatsoever on or at any time

23  prior to the date of this Settlement Agreement, including any and all claims for the avoidance

24  of preferential transfers under 11 U.S.C. § 547(b), the avoidance of fraudulent transfers under

25  11 U.S.C. §§ 548(a)(1)(A) and (B) and 544(b) and the California Uniform Fraudulent Transfer

26  Act, turnover and accounting under 11 U.S.C. § 542, breach of fiduciary duties, denying the

27  Debtor a discharge under 11 U.S.C. § 727, and seeking a determination that under 11 U.S.C. §

28  541 that the Beneficial Interests and/or the corpus of the Spendthrift Trusts constitute property

of the estate or that the Estate has any interest therein.

765886

5.      The Trustee is authorized to execute any other documentation and perform such other ministerial tasks as may be necessary to effect the Settlement Agreement.

6.      **ALL PERSONS (AS DEFINED IN SECTION 101(41) OF THE CODE) INCLUDING THE TRUSTEE AND ALL CREDITORS OF THE DEBTOR ARE HEREBY PERMANENTLY BARRED, ENJOINED, AND RESTRAINED FROM COMMENCING, PROSECUTING, OR ASSERTING ANY ACTION OR PROCEEDING AGAINST THE TAYLOR PARTIES ON ACCOUNT OF, OR WITH RESPECT TO, ANY OF THE ESTATE RELEASED CLAIMS** (the "Injunction").

7.      The Court shall retain jurisdiction with respect to all matters arising from or relation to the implementation of this Order and the Settlement Agreement, including to adjudicate any and all issues concerning either the Injunction or the determination that the Beneficial Interests or the Spendthrift Trusts constitute property of the Estate.

# # #

In re: Adam Daniel Taylor
United States Bankruptcy Court, Case No. 9:16-bk-10191-PC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
8 E. Figueroa Street, Suite 300, Santa Barbara, CA 93101
A true and correct copy of the foregoing document entitled (*specify*): **Motion for Order Authorizing Trustee to
Compromise a Controversy with Adam Taylor, etc.; Memorandum of Points and Authorities; Dec. of Sandra
McBeth**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**Nov.    , 2016     **, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

William C Beall     will@beallandburkhardt.com, carissa@beallandburkhardt.com
•Larry Butler     secured@becket-lee.com
•Ryan A. Ellis     re@h2law.com, vt@h2law.com
•Brian D Fittipaldi     brian.fittipaldi@usdoj.gov
•Karen L Grant     kgrant@silcom.com
•Megan E Lees     ecfcacb@aldridgepite.com, MEL@ecf.inforuptcy.com;mlees@aldridgepite.com
•Sandra McBeth (TR)     jwalker@mcbethlegal.com, CA65@ecfcbis.com
•Joseph M Sholder     sholder@g-tlaw.com
•Peter Susi     psusi@hbsb.com, susan@hbsb.com;krnimmons@hbsb.com
•Felicita A Torres     torres@g-tlaw.com
• United States Trustee (ND)     ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)        , 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case
or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge
will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)        , 2016, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Nov. 10, 2016          Evelyn R. Downs
*Date*                          *Printed Name*                                                  *Signature*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**